UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br>vs.<br><br>LUCAS CHARLES GREENWOOD,<br><br>        Defendant. | 3:10-cr-088-TMB-JDR<br><br>**RECOMMENDATION<br>REGARDING<br>MOTION TO<br>SUPPRESS SEARCH OF AUTO**<br><br>(Docket Nos. 16) |

Defendant **Lucas Charles Greenwood**, moves for an order suppressing evidence seized as a result of a warrantless search of his automobile on September 24, 2009 and the fruits of that search. Docket 16. The government filed an opposition to the motion. Docket 24. An evidentiary hearing on the motion

was conducted on November 10, and December 2, 2010. Upon due consideration of the evidence adduced and arguments of counsel the magistrate judge recommends that the court adopt findings of fact and conclusions of law as set forth below and that the Motion to Suppress be DENIED.

### Defendant's Claims

The defendant argues that the government has not met its burden of showing that the officers conducted a reasonable search constituting an exception to the warrant requirement when the rifle and ammo were found and seized. He argues that the warrant exception of an inventory search was merely an afterthought to what actually was only a search incident to arrest. The defendant argues that Trooper Peltier was not truthful in his testimony that he observed the butt of the rifle through the window because Trooper Chambers testified that he could not see anything of significance when he walked around Greenwood's Blazer. The defense is critical of the inventory search because valuable items such as a camera and computer were still left in the vehicle and the inventory search was not conducted in strict compliance with the Trooper's Procedural Manual. The government argues that the seizure of the gun and ammo were valid under three separate theories, namely plain view, incident to arrest, and inventory search.

//

//

**Findings of Fact**

On September 24, 2009 between midnight and 1:00 AM, Richard Chambers, an Alaska State Trooper assigned to the Mat-Su precinct as a patrol officer received information that a citizen had complained about a maroon colored Chevy Blazer being driven recklessly at a high rate of speed. Trooper Chambers observed the vehicle and turned around to follow it. The blazer was turning left on Knik Goose Bay Road on the Palmer Wasilla Highway. The officer's vehicle was equipped with a device which video recorded his chase of the vehicle. The trooper observed the driver's erratic driving at an excessive rate of speed. When the officer's vehicle reached 99 miles per hour he activated his police lights to pull the vehicle over.

Trooper Chambers approached the vehicle and the driver seemed very lethargic and inattentive to the officer's questions. There were no passengers in the vehicle. The driver later identified as Lucas Greenwood brought his hands below the doorway so it was difficult for the officer to see them. When Trooper Chambers took a quick walk around the Blazer he did not see anything of particular note worthy. At the time he knew that another officer would conduct any inventory search.

For officer safety he asked Greenwood to step out of the vehicle when Greenwood declined to answer the trooper's questions or produce documentation to the vehicle. He then proceeded to ask him standard questions relating to driving

under the influence of alcohol. He asked Greenwood if he had any guns or knives in the vehicle and Greenwood said "No." The officer noticed the defendant's blood shot and watery eyes, slurred speech, sluggish movements and an odor of alcohol about his person. Trooper Chambers decided to conduct a field sobriety test. Greenwood refused to take the test. Greenwood also declined to provide a sample of his breath for a breathalyser test.

After Greenwood stepped out of the vehicle the officer conducted a pat-down search for safety. During the pat-down search the trooper felt hard objects but he did not remove them from Greenwood's pockets because he did not consider the objects to be a gun or knife. He patted Greenwood's waist and pockets. At this time Greenwood was not under arrest. He placed Greenwood in the passenger front side of the police vehicle while he considered whether to charge Greenwood with reckless driving or impaired driving. The officer allowed Greenwood to make a telephone call on his own cell phone.

Greenwood was arrested by Trooper Chambers for driving while intoxicated, driving with revoked license and reckless driving. As incident to the arrest the trooper searched the pockets of Greenwood. This search produced a scale with an iPhone cover and a pipe containing a leafy substance in the bowl giving off the scent of burnt marijuana from the pipe. The scales were disguised as an iPhone. The presence of the scales indicated to the trooper the possibility of

distribution of drugs. After listening to the statements of Greenwood during his cell phone conversation the officer concluded that Greenwood must have been on probation or parole and was driving in violation of his conditions. Greenwood was then placed in the rear of the police vehicle. The trooper transported Greenwood to the Mat-Su Pretrial Facility.

Other officers had arrived and conducted an inventory search of the defendant's vehicle which they intended to impound. The impounded vehicle was towed to the Mat-Su towing and recovery impound yard in Palmer, Alaska, a secured police impound lot. Greenwood's permission for the inventory search was not sought. Greenwood was not granted the opportunity to choose whether to permit or refuse to permit the inventory search.

While the defendant was being processed at the Pretrial Facility, Trooper Chambers was informed by another officer that officers had found a loaded AK-47 Assault Rifle inside the vehicle during the inventory of the vehicle for impoundment. Reference to this assault rifle was made in Trooper Chambers' affidavit when he applied for a search warrant for the vehicle on October 12, 2009. A search warrant was issued for the vehicle by State Judge Wolfe and the warrant was executed on October 13, 2009. This search revealed a glass multi-colored pipe that smelled strongly of burnt marijuana.

In the first page of Trooper Chambers' police report it states that the rifle was within the reach of the driver. Under the synopsis section of the report it refers to the assault rifle as being found "incident to arrest." In the details of his report Trooper Chambers refers to finding the rifle during an "inventory search". He testified that because he did not personally find the rifle, he did not state in his report that it was seen in plain view. When Trooper Chambers executed the search warrant for the vehicle he photographed items found including a small Jazz brand camera and a laptop computer.

### The Assist by Troopers Peltier and Banc

On September 24, 2009, Alaska State Trooper Mike Peltier was a field training officer and patrol supervisor. Independently of Trooper Chambers he responded to the scene in response to a call from dispatch. He had with him Trooper Banc, a new recruit. When Trooper Peltier arrived at the scene Greenwood's vehicle had been stopped. Both Trooper Chambers and Greenwood were out of their vehicles. Greenwood appear to him uncooperative and displayed a demeanor beyond that observed in the average traffic stop.

Trooper Peltier walked around Greenwood's vehicle and observed through a window the butt of a rifle wedged between clothes and tools. He asked Trooper Banc to remove the gun from of the vehicle and assist him in an inventory search. He located four 30 round magazines in the pile of "clothes and stuff" behind

the front passenger seat. It appeared to the troopers that Greenwood had been living out of his vehicle.

Trooper Peltier did not write a report because his role was as "an assist" including impoundment of the vehicle. Nor did he prepare a report on his supervising the recruit. Trooper Peltier did not take any photographs of the gun and ammo removed from the vehicle.

The impoundment report Form 12-218 (Exhibit B to the Evidentiary Hearing) states that the reason for holding the vehicle was for DUI/Drug investigation. Item 10 in that Report captioned "Inventory" reads as follows: "Misc tools, clothing, iPod, radar detector." This report is dated September 24, 2009 at 0142 hours and is filled out by Trooper Banc. The purpose of the impound form is to list items of high value remaining in the vehicle before it is taken to the impound yard. The firearm and ammunition were removed from Greenwood's vehicle and placed in Trooper Peltier's police vehicle.

Trooper Peltier made hand written notes of what he observed in the vehicle while at the scene. The notes make no mention of a camera or computer. There is no evidence that Trooper Peltier saw those items at the scene before the vehicle was impounded. Trooper Peltier testified that the inventory search was not a complete search but an effort to locate and list items of value that a third party might observe from outside the vehicle at the impoundment lot.

The impound form did not list all of the clothing or tools Trooper Peltier observed in the vehicle. Trooper Peltier acknowledged that he and Trooper Banc did not complete a "detailed" inventory as directed in the Alaska Department of Public Safety Operating Procedures Manual (Rev. 2002), Chapter 209.050D wherein it states:

> "D. Inventory of the vehicle's contents. Officers will complete a detailed inventory of the contents of a vehicle when they impound it. Officers are not required to open closed containers or locked compartments. The containers should be listed on the inventory. If officers do not inspect locked compartments they should note that fact in their notebooks."

After the rifle was pulled out Trooper Peltier searched the area more thoroughly for evidence of the DUI offense and found the ammunition. The assault rifle was partially buried in a pile of clothing but in a place where the driver could have reached around and grabbed it. The ammo was probably contained in a pouch among the clothing. The magazines were loaded. Trooper Peltier knew that the possession of the gun constituted an offense of misconduct involving a weapon and also searched for other weapons nearby.

## Discussion

The stop of the vehicle by Trooper Chambers was lawful. The officer had reasonable suspicion to believe that the driver was committing a moving traffic violation. When Chambers observed the driver after the vehicle had pulled over he had reasonable suspicion to believe that the driver was driving while alcohol impaired. The lack of cooperation of Greenwood and his refusal to take a field sobriety test further heightened the officer's suspicions that the driver had been driving while intoxicated. The trooper had the lawful authority to ask the driver to exit the vehicle for questioning.

There is no evidence that Trooper Chambers searched the vehicle at the scene and in fact he testified that he had no knowledge of the assault rifle in the vehicle until he was informed of such by officers who impounded the vehicle. Trooper Chambers did not testify that a person would have been unable to see the butt of the rifle; rather he stated that he had not observed the gun during his walk around of the vehicle. It was reasonable for Trooper Chambers to believe that the vehicle contained controlled substances or drug paraphernalia based on the scales and pipe found on the defendant's person.

The search warrant authorizes the seizure of evidence of alcohol use. It was reasonable for the officer to seek a search warrant of the vehicle for evidence of alcohol use based on the defendant's appearance and demeanor at the scene.

## Inventory Search

Once a vehicle has been lawfully impounded the police may conduct an inventory search. South Dakota v. Opperman, 428 U.S. 364, 369 (1975). The Ninth Circuit Court of Appeals has discussed the reasons for conducting the inventory search as three-fold, namely: (1) the protection of the vehicle owner's property; (2) the protection of police against claims by the owner; and (3) the protection of the police from potential danger. United States v. Wanless, 882 F.2d 1459, 1463 (9th Cir. 1989), citing Opperman, supra. Wanless holds that the inventory search must be limited in scope to the extent necessary to carry out "the care taking function" and must be carried out in accordance with the standard procedures of the local police department. *Id.* The evidence shows that the inventory search was conducted in a limited manner in accordance with the standard procedures of the Alaska State Troopers.

Trooper Peltier's testimony that he saw the butt end of the rifle while looking through a side passenger window is credible. Once the rifle was discovered it was reasonable for the officer to look for ammunition during the inventory search. Even if the initial discovery of the ammo was unlawful, the government may rely upon the inevitable discovery doctrine for its seizure.

The officers were justified in impounding Greenwood's Blazer for safekeeping. He was arrested away from home in the middle of the night while

intoxicated and there was no one there to drive his vehicle away. The fact that Greenwood may have used his vehicle for overnight sleeping did not give him any greater Fourth Amendment protection against the seizure of the vehicle. Police may lawfully impound the personal affects that are with a person at the time he is arrested to ensure the safety of those effects. *See* for example, <u>United States v. Hood</u>, 183 F.3d 744 (8th Cir. 1999) (Impoundment of car upon driver's arrest lawful where parked in "lot of a residential building in which [defendant] did not live and where he could not properly leave his car").

Reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment. <u>Colorado v. Bertine</u>, 479 U.S. 367 (1987). That the officers may not have compiled a detailed inventory of the many personal effects in the Blazer on an impound form before the vehicle was towed to the impoundment lot does not invalidate the legality of the impoundment of the vehicle. The observation of the rifle was made by Trooper Peltier at the scene before the impoundment inventory was taken. The impoundment was supported by probable cause, an undertaking consistent with the police role as caretaker. *See* <u>South Dakota v. Opperman</u>, 428 U.S. 364 (1976). The officers were also justified in impounding the vehicle while they sought a search warrant for the vehicle for evidence upon probable cause that certain objects of that character would be found therein.

An inventory search is not exempt from requirements of reasonableness set down in the Fourth Amendment. Under the facts of this case I find no credible evidence that the officers rummaged through Greenwood's private effects in violation of Greenwood's reasonable expectation of privacy in his automobile and its contents by conducting their inventory search. The inventory search was conducted within the limits necessary to meet the reasonableness requirement of the Fourth Amendment. The practice of an inventory of an impounded vehicle is consistent with the Trooper's regulations regarding vehicles that they have caused to be placed in the custody of a towing company. An inventory search protects the vehicle and the property in it and safeguards the police from claims of lost possessions. United States v. Ducker, 491 F.2d 1190 (5th Cir. 1974).

Once Trooper Peltier observed what appeared to him to be the butt of a rifle, he was justified in removing it before the vehicle was towed to an impoundment lot. If the officers had not conducted an inventory search at the scene then an assault rifle with magazines loaded with ammo would have remained in the vehicle subject to theft or use by someone else to commit a crime. They also constituted evidence of the offense of misconduct with a weapon by a person who was intoxicated.

Based upon exigent circumstances an inventory search was conducted in temporal proximity between the lawful seizure of the vehicle and impoundment.

Where valuable property is left on the seat or floor of the car and plainly visible to anyone peering through the window the danger of theft is substantial. United States v. Mitchell, 458 F.2d 960 (9th Cir. 1972). Once the police have reason to believe that the car contains a gun the search for the weapon is justified because of "concern for the safety of the general public who might be endangered if an intruder" removes a weapon from the vehicle. Cady v, Dombrowski, 413 U.S. 433 (1973).

In Harris v. United States, 390 U.S. 234 (1968) a vehicle was seized at the time of defendant's arrest for robbery and the officer found incriminating evidence therein while acting pursuant to a Department regulation requiring a thorough search of impounded vehicles. There, the evidence in question was found in plain view while the officer was doing no more than securing the doors and windows. The Supreme Court upheld the discovery of the evidence without passing upon the legality of a full inventory.

There is a "diminished" expectation of privacy as to automobiles in the customary need for police inventory of impound vehicles. South Dakota v. Opperman, supra. The Constitution permits routine inventory searches. *Id.* In his concurring opinion in Opperman, Justice Powell observed that such searches should be permitted without a search warrant because there are no special facts for a neutral magistrate to evaluate.

The objective of an inventory search to protect the owner's property is certainly served by removing a rifle that is visibly observed protruding from a pile of clothing in the vehicle. Trooper Chambers had been falsely told by Greenwood that he had no firearms in the vehicle. Pursuant to Cady v. Dombrowski, supra, if officers have reason to believe that there is a gun in the car they may search the vehicle for the weapon in order to protect the public.

An inventory list is prepared by the police. Considering the policy's stated purposes an item by item inventory is not inevitably necessary to accomplish the objective to guard against alleged loss of property from the vehicle. Where the impound lot is a relatively secure facility a full inventory appears unnecessary at the scene. The matter of assessing whether the inventory list on the impoundment form is "detailed" is essentially an administrative matter that does not effect the validity of the seizure of the gun and ammo in the instant case. The inventory itself was prompted by the presence in plain view of a number of potentially valuable items inside the car.

The right to inventory is not limited by a probable cause requirement with respect to valuables that are within the particular vehicle. Once the trooper was lawfully inside the car to secure the personal property in plain view it was not unreasonable to inspect the pouch for ammunition because a vandal would have had ready and unobstructed access once inside the car. Opperman, supra.

The search itself was conducted in accordance with establish police department policy. As the courts have recognized the regularized set of procedures adequately guard against arbitrariness. On the evidence of record the government has shown that there was an established reasonable procedure for safe guarding impounded vehicles and their contents and that the police activity was essentially in conformance with that procedure. The standard inventory form was completed and kept. Although the inventory form fails to list the small camera and computer no bad faith occurred in this oversight. The officers may have been satisfied with their inspection of the carload of stuff in the vehicle or they may not have seen those two items of property. They intended to seek a search warrant "to search" the vehicle for evidence.

The inventory was conducted in a manner reasonably related to its purpose to protect the car owner from loss and the police or other custodian from liability on an unjust claim. Trooper Chambers promptly applied for and obtained a search warrant for the vehicle. To wait for a detailed inventory list to be prepared after the execution of the search warrant was not unreasonable. Even if Trooper Peltier should not have opened the pouch to seize the ammo the government would have inevitably have obtained that piece of evidence upon the execution of the search warrant.

In the course of the inventory process once the rifle as evidence of a crime was discovered, this conferred upon the police the authority to further search the vehicle on probable cause in areas beyond that allowed to be inspected during an inventory search. The officers had probable cause to suspect Greenwood of the offenses of driving while intoxicated, possession of drug paraphernalia, and possession of a firearm while being intoxicated.

### Search Incident to Arrest

A search incident to a lawful arrest exception to the warrant requirement arises from the interest in officer safety and evidence preservation that are typically present during an arrest. If there is no possibility that an arrestee may reach into the area that law enforcement officers seek to search the safety and safeguarding evidence justifications underlying <u>Chimel v. California</u>, 395 U.S. 752 (1969) are absent.

In <u>Arizona v. Gant</u>, 129 S. Ct. 1710 (2009) the Supreme Court recognized that circumstances unique to the automobile context may also justify search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." <u>Gant</u>, at 1713, citing <u>Thornton v. United States</u>, 541 U.S. 615, 632 (2004). In <u>Thornton</u> the Supreme Court held that the Fourth Amendment allows an officer to search a vehicle's passenger

compartment as a contemporaneous incident of arrest even when the officer does not make contact until the person arrested has already left the vehicle.

In Gant, the evidentiary basis for the search incident to arrest was lacking because Gant was arrested for driving with a suspended license, an offense for which the police could not reasonably have expected to find evidence in Gant's car. In contrast, Thornton was arrested for a drug offense.

Greenwood was arrested for driving while intoxicated but he was also suspected of distributing drugs based on items found in his pockets. Officers could reasonably have searched Greenwood's vehicle for evidence related to the charge of driving under the influence of alcohol. In the instant case circumstances unique to the vehicle context justify search incident to a lawful arrest because it was reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle. Gant, supra.

There is no fixed outer limit for the duration of time that may pass between an arrest of an occupant of an automobile and the valid warrantless search of the passenger compartment of the vehicle that is contemporaneous incident of the arrest. United States v. Weaver, 433 F.3d 1104 (9th Cir. 2006). In Weaver the search of the defendant's vehicle commenced 10 to 15 minutes after the defendant's passenger was arrested and the search of the vehicle was delayed while the arresting officer summoned a third officer to the scene. Weaver applied the

10-cr-088-TMB-JDR GREENWOOD @16 RR Re Motion to Suppress Search of Auto_mtd.wpd    17

Case 3:10-cr-00088-TMB   Document 40   Filed 12/07/10   Page 17 of 19

automobile exception (the Belton Rule) arising from New York v. Belton, 453 U.S. 454, 460 (1981). Belton was arrested for drug offenses. In the instant case it was reasonable to believe that Greenwood's vehicle contained evidence of the offense of arrest, and it was reasonable for Trooper Chambers to wait for Troopers Peltier and Banc to provide assistance before any search of the automobile occured.

### Inevitable Discovery

The government argues that the evidence found as a result of the execution of the search warrant should be admissible under the inevitable discovery doctrine. Under this doctrine, evidence that would normally be excluded will be admitted if the prosecution is able to show by a preponderance of the evidence that any materials unlawfully seized would inevitably have been discovered by lawful means. United States v. Andrade, 784 F.2d 1431, 1433 (9th Cir. 1986). Although it is clear that the ammo was not visible by looking through the window the assault rifle and ammo would have inevitably been discovered if the troopers had delayed their inventory search until a search warrant could be issued.

### Summary

The arrest of Greenwood and the impoundment of his vehicle were lawful. Moreover, the assault rifle would inevitably have been discovered once the law enforcement officers impounded the vehicle and executed the search warrant. Accordingly, the Motion to Suppress should be denied. IT IS SO RECOMMENDED.

DATED this 7th day of December, 2010, at Anchorage, Alaska.


    /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge


Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, Monday, December 13, 2010**. The failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. <u>McCall v. Andrus</u>, 628 F.2d 1185, 1187-1189 (9th Cir.), <u>cert</u>. <u>denied</u>, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation <u>United States v. Howell</u>, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **4:00 PM, Wednesday, December 15, 2010**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. <u>See</u> <u>Hilliard v. Kincheloe</u>, 796 F.2d 308 (9th Cir. 1986).